1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10
11  BRANDON JOHNSON, an individual;          CASE NO. SACV 13-128-JLS (RNBx)
12  LANCE COWLEY, an individual; and
    on behalf all others similarly situated,
13
14              Plaintiffs,                   **ORDER GRANTING PLAINTIFFS'**
                                              **SECOND AMENDED MOTION FOR**
15         vs.                                **PRELIMINARY APPROVAL OF**
                                              **CLASS ACTION SETTLEMENT (Doc.**
16                                            **47)**
17  METLIFE, INC.; METROPOLITAN
    LIFE INSURANCE COMPANY; and
18  METLIFE SECURITIES, INC.,
19
20              Defendants.
21
22
23
24
25
26
27
28

1

## I.   INTRODUCTION

Before the Court is an unopposed Motion for Preliminary Approval of Class Action Settlement filed by Plaintiffs Brandon Johnson and Lance Cowley.  (Doc. 47.)  Plaintiffs ask the Court to preliminarily approve the proposed settlement, conditionally certify the settlement class, appoint Plaintiffs as class representatives and Plaintiffs' counsel as Class Counsel, appoint Gilardi & Co. LLC as Settlement Administrator, and approve the proposed form and method of class notice.  The Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  Accordingly, the hearing set for November 7, 2014, at 2:30 p.m., is VACATED.  Having reviewed and considered the papers, the Court GRANTS the Motion and sets a Fairness Hearing for **March 13, 2015, at 2:30 p.m.**

## II.   BACKGROUND

On April 30, 2014, Plaintiffs filed the operative Second Amended Complaint, against Defendants MetLife Inc., MetLife Securities Inc., and Metropolitan Life Insurance Company (together, "MetLife") asserting claims for: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; (2) failure to pay overtime wages under Cal. Labor Code §§ 510, 1194, 1998; (3) failure to reimburse expenses in violation of Cal. Labor Code §§ 406, 407, 2802(a)-(c); (4) prohibited wage chargebacks in violation of Cal. Labor Code §§ 200, 202, 204; (5) failure to provide meal and rest periods in violation of Cal. Labor Code §§ 226.7, 512; (6) failure to provide itemized wage statements in violation of Cal. Labor Code §§ 226, 1174; (7) failure to pay wages on termination in violation of Cal. Labor Code § 203; and (8) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Doc. 38.)

Plaintiffs' factual allegations can be grouped into four main categories.  First, Plaintiffs allege that MetLife misclassified its FSRs as exempt employees, thereby

1   failing to pay them overtime and to provide or pay for rest and meal periods.  (Id. ¶¶
2   8-9, 24, 28-34.)  Second, Plaintiffs allege that MetLife improperly required FSRs to
3   pay overhead costs pursuant to its Career Development Financing Plan.  (Id. ¶¶ 48-
4   50; *see* id. Ex. A).  Third, Plaintiffs allege that MetLife improperly withheld
5   commissions already earned by FSRs who were terminated before they completed
6   twelve quarters of employment.  (Id. ¶¶ 26-27, 64-69.)  Finally, Plaintiffs allege that
7   MetLife failed to fully reimburse FSRs for out-of-pocket business expenses.  (Id. ¶¶
8   48-57.)

9        On March 7, 2014, the parties filed a Notice of Settlement (Doc. 30), and
10  Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement on
11  April 11, 2014.  (Doc. 33.)  On June 3, 2014, the Court denied the Motion without
12  prejudice on the grounds that it: (1) was inequitable as to its distribution of
13  settlement funds; (2) did not provide classwide evidence to support the claim for
14  unreimbursed business expenses; (3) designated an improper *cy pres* recipient; and
15  (4) did not provide adequate justification for Cowley's incentive award.  (Doc. 43.)
16  On July 1, 2014, Plaintiffs filed an Amended Motion for Preliminary Approval of
17  Class Action Settlement.  (Doc. 44.)  On August 29, 2014, the Court denied the
18  Amended Motion without prejudice on the grounds that the proposed *cy pres*
19  recipient was still improper.  (Doc. 46.)  On September 23, 2014, Plaintiffs filed the
20  instant Second Amended Motion for Preliminary Approval of Class Action
21  Settlement.  (Doc. 47.)  In response to concerns raised by the Court in its tentative
22  order, the parties made further revisions to the Settlement Agreement, which they
23  submitted to the Court on October 31, 2014.  (Settlement Agreement, Doc. 52-1, Ex.
24  1.)

25        The Settlement Agreement defines the class as all individuals employed by
26  MetLife as FSRs in California at any time from January 25, 2009 through March 31,
27  2014.  (Id. ¶¶ 1.1, 1.5, 1.32.)  Under it, MetLife will pay a total of up to $1,970,000.
28  (Id. ¶ 1.31.)  This figure includes: up to $492,500 in Class Counsel's attorneys' fees;

up to $30,000 in Class Counsel's litigation costs; up to $19,000 in claims
administration costs; and Class Representative enhancement payments of up to
$15,000 to Johnson and $2,500 to Cowley, with the remainder comprising the Net
Settlement Fund.[1]  (Id.)

The Net Settlement Fund will consist of three subfunds:

1. 16 percent of the Net Settlement Fund will go to the "Novitiate
   Fund."  (Id. ¶ 1.20.)  This subfund will be payable to class members
   who were on MetLife's Career Development Financing Plan and
   whose employment with MetLife was terminated for any reason
   prior to the completion of twelve payment quarters with the
   company, and will settle claims regarding forfeiture of commissions
   and improper wage deductions.  (Id. ¶¶ 1.19, 1.20.)  Each Novitiate
   will take a *pro rata* share of this subfund based on the amount
   credited to them under MetLife's compensation plan but not
   actually paid upon termination, as compared to other Novitiate Fund
   members.  (Id. ¶ 1.35(i).)

2. 42 percent of the Net Settlement Fund will go to the "COGS Fund."[2]
   (Id. ¶ 1.22.)  This subfund will be payable to class members who
   were employed by MetLife for more than ten quarters – when
   MetLife began to charge FSRs for COGS expenses – and will settle
   claims regarding deductions of MetLife's operating expenses from

---

[1]  Should the Court award less than the maximum authorized attorneys' fees, litigation
costs, or claims administration fees, the remainder will go to the to the *cy pres* beneficiary, the
Legal Aid Society – Employment Law Center.  (Settlement Agreement ¶¶ 2.8.1, 2.9.1.)  Should
the court award less than the maximum authorized incentive awards to Plaintiffs Johnson and
Cowley, the remainder will go to the Net Settlement Fund for distribution to the class.  (Id. ¶
2.8.2.)

[2]  "COGS" refers to MetLife's Cost of Goods & Services.  (Id. ¶ 1.14.)

4

class members' accounts.  (Id.)  COGS Fund members will take a *pro rata* share of this subfund based on the actual COGS expenses deducted from their account during the class period, as compared to other COGS Fund members.  (Id. ¶ 1.35(ii).)

3. 42 percent of the Net Settlement Fund will go to the "Expense Reimbursement/Overtime Fund."  (Id. ¶ 1.22.1)  This subfund will be payable to class members to settle claims for unpaid overtime compensation and expense reimbursement.  (Id.)  Expense Reimbursement/Overtime Fund members will take a *pro rata* share of this subfund based on their number of work weeks with MetLife, as compared to other subfund members.[3]  (Id. ¶ 1.35(iii).).

30 percent of each class member's award will be considered payment for unpaid wages, and will therefore be subject to withholding and be reported to the Internal Revenue Service on a W-2.  (Id. ¶ 2.2.1.)  The remaining 70 percent will be considered payment for unpaid expenses, interest, liquidated damages and penalties, and will not be subject to withholding, and will be reported as non-wage income on a form 1099.  (Id.)

    The Settlement Agreement provides for the release of claims by class members who do not opt out.  Specifically, it provides that class members release all claims under California law that (1) are or could have been asserted in this litigation; (2) involve failure to pay FSRs overtime compensation or provide them with paid meal and rest breaks; (3) stem from the alleged misclassification of FSRs as exempt employees; (4) involve failure to reimburse or unlawful imposition or deduction of expenses or costs by MetLife; and (5) any claims "arising from" the aforementioned claims.  (Id. ¶ 1.29; Proposed Class Notice, Doc. 52-1, Ex. B, at 5-6.)  It further

---

[3]  Plaintiffs calculate unpaid overtime in this manner because, as exempt employees, MetLife did not track FSRs' actual hours worked.  (*See* Amended Mem., Doc. 44-1, at 3.)

provides that class members release all claims arising under federal law that could have been asserted in this litigation under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C.§§201, et. seq., or are otherwise related to Metlife's failure to properly compensate them for overtime hours worked. (Settlement Agreement ¶¶ 1.28, 2.4.8; Proposed Class Notice at 5-7.)

The Settlement Agreement provides for notice to class members via first class mail to their last known address.  (Id. ¶ 2.4.1.)  MetLife will provide the names and last known addresses of all class members within 10 days of the Court's preliminary approval.  (Id. ¶¶ 2.4.1, 2.4.3.)  Before mailing, the Claims Administrator will conduct a "Reasonable Address Verification Measure" to ascertain class members' most recent address, which will be treated as the last known address if it differs from that provided by MetLife.  (Id. ¶ 2.4.4.)  MetLife will also identify which class members are to participate in the Novitiate Fund, which are to participate in the COGS Fund, and the number of workweeks for all class members.  (Id. ¶ 2.4.3.)  The Notice will be deemed received by the class member five days after mailing, unless the United States Postal Service returns it.  (Id. ¶ 2.4.7.)  If it is returned with a forwarding address, the Claims Administrator will re-mail the notice to that address, and the notice will be deemed received five days after mailing.  (Id.)  If the notice is returned by the USPS without a forwarding address, the Claims Administrator will perform a "standard skip trace" to ascertain the class member's current address and will resend the notice to that address.  (Id.)  If the skip trace reveals no current address, the Claims Administrator will resend the notice to the last known address.  (Id.)  In either case, the notice will be deemed received five days after mailing.  (Id.)

The notice will summarize the Settlement Agreement and inform any class member that failure to timely opt out of the settlement will constitute acceptance of the settlement and its releases.  (Id. ¶ 2.4.8.)  It will also inform class members that they may reject the settlement by timely opting out and not negotiating the

settlement check.  (Id.)   The notice will inform each class member of the number of their work weeks and inform class members that they may dispute the calculation of their work weeks by contacting the Claims Administrator with supporting documentation.  (Id.)  The Net Settlement Fund will be reduced on a *pro rata* basis for each class member who timely opts out; this will reduce the total amount MetLife is to pay.  (Id. ¶ 2.5.1)

In the event the Court grants final approval, the Claims Administrator will pay each class member their total settlement sum within 30 days of the entry of final judgment.  (Id. ¶¶ 2.6.1, 1.8.)  The checks will remain negotiable for 60 days, after which the funds will become part of the residue and be donated to the *cy pres* beneficiary, the Legal Aid Society – Employment Law Center.  (Id. ¶¶ 2.4.8, 2.6.3.)  Class members who fail to negotiate their checks within 60 days will nevertheless remain bound by the terms of the settlement, including its releases.  (Id. ¶ 2.6.3.)

## III.   CONDITIONAL CERTIFICATION OF THE CLASS

### A.   Legal Standard

Plaintiffs seek conditional certification of the class pursuant to Fed. R. Civ. P. 23.  When conditionally certifying a class for settlement purposes, a court "must pay undiluted, even heightened, attention to class certification requirements."  *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation marks and citation omitted).

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)."  *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S. Ct. 2541, 2550 (2011).  Under Rule 23(a), the party seeking certification must demonstrate, first, that:

1

2        (1) the class is so numerous that joinder of all members is impracticable,

3        (2) there are questions of law or fact common to the class, (3) the claims

4        or defenses of the representative parties are typical of the claims or

5        defenses of the class, and (4) the representative parties will fairly and

6        adequately protect the interests of the class.

7

8 *Id.* at 2548 (citing Fed. R. Civ. P. 23(a)).  "Second, the proposed class must satisfy

9 at least one of the three requirements listed in Rule 23(b)."  *Id.*  Rule 23(b) is

10 satisfied if:

11

12        (1) prosecuting separate actions by or against individual class members

13        would create a risk of:

14                (A) inconsistent or varying adjudications with respect to individual

15                class members that would establish incompatible standards of

16                conduct for the party opposing the class; or

17                (B) adjudications with respect to individual class members that, as a

18                practical matter, would be dispositive of the interests of the other

19                members not parties to the individual adjudications or would

20                substantially impair or impede their ability to protect their interests;

21        (2) the party opposing the class has acted or refused to act on grounds that

22        apply generally to the class, so that final injunctive relief or corresponding

23        declaratory relief is appropriate respecting the class as a whole; or

24        (3) the court finds that the questions of law or fact common to class

25        members predominate over any questions affecting only individual

26        members, and that a class action is superior to other available methods for

27        fairly and efficiently adjudicating the controversy.

28

Fed. R. Civ. P. 23(b).  "Rule 23 does not set forth a mere pleading standard," thus "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 131 S. Ct. at 2551.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.*

## B.   Requirements Under Rule 23(a)

### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Classes of more than 40 members are generally numerous enough.  *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012); *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'[i]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted).  Here, the proposed class comprises 431 FSRs who have been identified and located from MetLife's personnel and payroll records.  (Mem., Doc. 33-1, at 13.)[4]

Numerosity is therefore satisfied.

---

[4]  Because the Court has twice denied Plaintiffs' claim without prejudice and raised additional concerns in its October 23, 2014 tentative order, Plaintiffs have now filed three memoranda in support of preliminary approval.  Because Plaintiffs' second, third, and fourth memoranda address only specific concerns raised by the Court's denials, the initial memorandum remains operative on most points.  Accordingly, citations to "Mem." in this Order refer to the initial memorandum unless otherwise noted.

1

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law," but instead that their claim(s) "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Although for purposes of Rule 23(a)(2), "even a single common question will do," id. at 2556 (internal citation, quotation marks, and brackets omitted), "[w]hat matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (emphasis included).

Here, the proposed class consists of 431 employees who held the same position – Financial Services Representative – and were subject to identical compensation policies. The Court agrees with Plaintiffs that numerous questions of law raised in this litigation about those policies – such as the legality of the FSRs' classification as exempt and resulting lack of overtime pay, and MetLife's failure to reimburse them for business expenses and COGS charges – are shared by all proposed class members, such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. (Mem. at 13:14.)

Accordingly, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to

1 be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The

2 typicality requirement looks to whether the claims of the class representatives [are]

3 typical of those of the class, and [is] satisfied when each class member's claim

4 arises from the same course of events, and each class member makes similar legal

5 arguments to prove the defendant's liability."  *Stearns v. Ticketmaster Corp.*, 655

6 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted).

7 "Typicality requires that the named plaintiffs be members of the class they

8 represent."  *Id.* at 613 (citing *Falcon*, 457 U.S. at 156).  The commonality,

9 typicality, and adequacy-of-representation requirements "tend to merge" with each

10 other.  *Dukes*, 131 S. Ct. at 2551 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

11       Here, Plaintiffs worked as MetLife Financial Services Representatives during

12 the class period, as did all other members of the proposed class.  Therefore,

13 Plaintiffs are members of the class they represent.  For same reason, named

14 Plaintiffs were subject to the same policies as the proposed class members that give

15 rise to this litigation.  Therefore, Plaintiffs' claims arise from the same events as

16 those of the proposed class, and Plaintiffs will rely on the same legal arguments as

17 the proposed class members to prove MetLife's liability.  *See Stearns*, 655 F.3d at

18 1019.

19       The Court therefore finds the typicality requirement is met.

20

21       **4.**    **Adequacy of Representation**

22       Rule 23(a)(4) permits certification of a class action only if "the representative

23 parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

24 23(a)(4).  "This factor requires: (1) that the proposed representative plaintiffs do not

25 have conflicts of interest with the proposed class, and (2) that plaintiffs are

26 represented by qualified and competent counsel."  *Dukes*, 603 F.3d at 614.

27       Plaintiffs do not provide declarations for Johnson or Cowley indicating that

28 they lack conflicts with the proposed class, or otherwise provide evidence of this,

except to state that no conflict exists because "Plaintiffs and Class Members have allegedly been injured in substantially the same manner." While exceedingly thin, the Court agrees that Plaintiffs appear to share a common injury with the rest of the proposed class, since both allegedly worked without being paid overtime, while Johnson incurred unreimbursed business expenses and Cowley incurred COGS withholding. (Mem. at 3-4; see also First Decl. of David Markham, Doc. 33-2, ¶¶ 6-7.) Accordingly, Johnson and Cowley appear to be adequate class representatives. However, the Court will require sworn testimony from Johnson and Cowley, in the form of declarations or otherwise, as to their lack of conflicts before final approval.

As to the adequacy of Plaintiffs' Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Based on the extensive experience of David R. Markham, Walter Haines, and R. Craig Clark in class-action litigation, the Court concludes the adequacy requirements under Rule 23(g) are met. (*See* First Markham Decl. ¶¶ 18-19; Decl. of Walter Haines, Doc. 33-3, ¶¶ 1-2; Decl. of R. Craig Clark, Doc. 33-4, Ex. A.) As a result, the Court will appoint these attorneys and their law firms, the Markham Law Firm, United Employees Law Group, and Clark Law Firm, as Class Counsel in this matter.

### C.  Requirements Under Rule 23(b)

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three elements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. (Cert. Mot. at 8.) Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact

common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3) (emphasis added).  The Court may consider:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

*Id*.

### 1.     Predominance

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 1778 (2d ed. 1986)).

Here, common questions present not only a "significant aspect" of the case, but nearly all of it.  These include the legality of MetLife's forfeiture policy; its failure to reimburse class members for out-of-pocket business expenses; their classification as exempt workers and resulting failure to pay overtime; and COGS charges assessed against class members who reached ten quarters of service as

FSRs.  (*See* Mot. at 16.)  These questions can be resolved in a single adjudication and clearly justify handling this dispute on a representative, rather than an individual, basis.

Accordingly, the Court finds the predominance requirement is met.

### 2. Superiority

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.*

Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy.").  Further, litigation costs would likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*, 150 F.3d at 1023.  "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1199 n.2 (9th Cir. 2001) (citation omitted).

Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C).  This particular forum is desirable because the class members worked in California.  *See* Fed. R. Civ. P. 23(b)(3)(C).  Finally, the Court is not aware of any litigation concerning the controversy that has already begun by or against class members.  *See* Fed. R. Civ. P. 23(b)(3)(B).

1    Thus, the Court finds the superiority requirement is met.

2

3    **D.    Conclusion**

4    For the foregoing reasons, the Court finds the proposed class satisfies the

5    requirements of Federal Rule of Civil Procedure 23 and GRANTS conditional class

6    certification.

7

8    **IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

9    Rule 23(e)(2) requires the Court to determine whether the proposed

10   settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  In turn,

11   review of a proposed settlement typically proceeds in two stages, with preliminary

12   approval followed by a final fairness hearing.  Federal Judicial Center, *Manual for*

13   *Complex Litigation*, § 21.632 (4th ed. 2004).

14   To determine whether a settlement agreement is fair, adequate, and

15   reasonable at the preliminary approval stage, "a district court must [ultimately]

16   consider a number of factors, including: the strength of plaintiffs' case; the risk,

17   expense, complexity, and likely duration of further litigation; the risk of maintaining

18   class action status throughout the trial; the amount offered in settlement; the extent

19   of discovery completed, and the stage of the proceedings; the experience and views

20   of counsel; the presence of a governmental participant;[5] and the reaction of the class

21   members to the proposed settlement."  *Staton*, 327 F.3d at 959 (internal citation and

22   quotation marks omitted).  "The relative degree of importance to be attached to any

23   particular factor will depend upon and be dictated by the nature of the claim(s)

24   advanced, the type(s) of relief sought, and the unique facts and circumstances

25   presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n*, 688

26   _____

27   [5] This factor does not apply to the case.

28

F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at 960 (citation omitted).

At this preliminary stage and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary."  *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of *possible* approval   . . . ."  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2009) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

In any event, the Court evaluates all applicable factors below and finds that the Settlement Agreement should be preliminarily approved.

### A.   Arms-Length Negotiation

Plaintiffs' Counsel represents that the Settlement Agreement is the result of sustained, arms-length negotiations.  Specifically, the parties participated in an all-day mediation before a mediator who specializes in large wage-and-hour class action resolution.  (Mem. at 18; First Markham Decl. ¶ 11.)  The mediation brought the parties close to settling, and they later reached a settlement in principle following further negotiations.  (First Markham Decl. ¶ 12.)  The mediator's role in

1   bringing about the instant Settlement Agreement weighs in favor of its approval.

2   *See Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 WL 221862, at *5 (N.D. Cal.

3   Jan. 26, 2007) ("The settlement was negotiated and approved by experienced

4   counsel on both sides of the litigation, with the assistance of a well-respected

5   mediator with substantial experience in employment litigation [, and] this factor

6   supports approval of the settlement.").  Moreover, Plaintiffs' Counsel represents that

7   the parties reached settlement only after extensive discovery and therefore had a

8   clear view of their respective cases' strengths and weaknesses.  (Mem. at 18; First

9   Markham Decl. ¶¶ 8-10.)

10        Given the parties' active litigation of this case as well as the role of a

11   mediator in facilitating the instant settlement, Court is satisfied that the Settlement

12   Agreement is the result of arms-length, noncollusive, and informed negotiations.

13

14        **B.        Strength of Plaintiffs' Case and the Amount Offered in Settlement**

15        Plaintiffs assert that while they believe their case has merit, numerous

16   potential obstacles exist that could prevent them from establishing MetLife's

17   liability at trial.  Specifically, they argue the following: (1) it would be difficult to

18   prevail on their misclassification claim in light of a 2006 United States Department

19   of Labor opinion letter indicating that many FSRs are exempt from overtime under

20   the administrative exemption of the FLSA; (2) resolution of their forfeiture claim is

21   unclear because, while caselaw exists holding that commissions are wages that

22   cannot be forfeited, other decisions suggest that an employer may define by contract

23   when a commission is "earned" and therefore take it away before that point in time;

24   and (3) the viability of the COGS and expense reimbursement claims is also unclear

25   because, while Plaintiffs believe MetLife violated Cal. Labor Code §§ 221 and 2802

26   by deducting COGS expenses and failing to provide actual reimbursement of

27   business expenses, MetLife contends that it adequately compensated FSRs for these

28   amounts by providing a separate expense allowance.  (Mem. at 20-21.)  Defendant

1  corroborates this and lays out its defenses to each of Plaintiffs' claims in a

2  separately filed memorandum.  (*See* Defendants' Supplemental Memorandum of

3  Law in Further Support of Motion for Preliminary Approval, Doc. 53.)  Given these

4  possible defenses, and in light of the fact that settlement was reached after more

5  than a year of litigation and discovery, the Court concludes the parties' decision to

6  reach a settlement in this matter was reasonable.

7        As to the amount of the settlement, Plaintiffs initially contended that the

8  settlement figure of $1,970,000 was fair because it represents 53% of the potential

9  maximum recovery for Plaintiffs' liquidated claims while avoiding the risks, costs

10 and uncertainty of prolonged litigation.[6]  (Mem. at 20.)  In response to the Court's

11 tentative order, Plaintiffs estimated the potential maximum recovery on their

12 unliquidated claims to be $2,355,468.[7]  (Supplemental Memorandum of Points and

13 Authorities in Support of Plaintiffs' Second Amended Motion for Preliminary

14 Approval, Doc. 52, at 4.)  Thus, the settlement figure represents roughly 33% of

15 class members' potential maximum recovery of $5,924,612.02 on both liquidated

16 and unliquidated claims.  The Court agrees that this figure supports approval of the

17 Settlement Agreement.  *Cf. Glass*, 2007 WL 221862 at *4 (approving settlement of

18 an unpaid overtime and improper deduction class action where the settlement figure

19 "constituted approximately 25 to 35% of the amount of damages plaintiffs could

20 have hoped to prove at trial").  The Court, having considered Plaintiffs'

21 supplemental briefing on the issue, also finds the allocation of the Net Settlement

22 Fund among the various subclasses fair.  (*See* Supplemental Memorandum at 4.)

23 _____

24       [6]  Plaintiffs arrived at this figure because MetLife provided data showing the actual amount

25 of funds forfeited by the Novitiate class is $557,066.02 and the actual amount of funds charged for

26 COGS is $3,012,078.  (First Markham Decl. ¶ 14.)

27       [7]  Plaintiffs can provide estimates only because Metlife did not track FSRs' overtime hours
   and out-of-pocket business expenses.  (First Markham Decl. ¶ 14.)

28

18

The Settlement Agreement includes an award of up to $495,500 in attorneys' fees.  (Mem. at 9.)  This represents 25% of the total settlement and therefore conforms to the Ninth Circuit's "benchmark" fee award in common fund cases.  *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Nevertheless, the Court has a responsibility to ensure attorneys' fees it awards are not unreasonably high in light of the benefit to the class.  *See Staton*, 327 F.3d at 964.  In the final motion for attorneys' fees, which must be filed **separately** from the motion seeking final approval, Class Counsel will need to make a sufficient showing as to the reasonableness of a 25% award in this case, for instance by submitting evidence of hours worked, billing rates, financial risk taken, and the like. Class Counsel will similarly need to provide a detailed accounting of costs incurred before the Court will award the $30,000 in costs they seek.  (Mem. at 9.)

The Settlement Agreement also includes incentive payments for Class Representatives Johnson and Cowley as follows: $15,000 to Johnson and $2,500 to Cowley.  (Settlement Agreement ¶ 1.31.)  These amounts are not unreasonable to the extent that Johnson and Cowley have been actively involved in advancing this litigation.  *See Smith v. CRST Van Expedited, Inc.*, 10-CV-1116-IEG WMC, 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (approving incentive payments of $15,000 in a wage and hour action where Plaintiffs were actively involved in the litigation and placed their employability in the industry at risk through their involvement in the litigation).  Nevertheless, Plaintiffs provide little information as to Johnson's involvement and none as to Cowley's except to promise more information at the final approval stage.  (First Markham Decl. ¶ 8; Amended Mem. at 7-8.)  The Court will require this information before granting final approval to these proposed incentive awards.

The Settlement Agreement allocates $19,000 for claims administration costs and provides for the appointment of Gilardi & Co as Claims Administrator.  (Mot. at 9-10.)  The Court finds this amount reasonable in light of the size and complexity of

1  the instant settlement and finds Gilardi & Co. qualified to administer class

2  members' claims in this action.

3          Finally, the Settlement Agreement proposes as *cy pres* beneficiary the Legal

4  Aid Society – Employment Law Center.  (Settlement Agreement ¶ 2.4.)  "A *cy pres*

5  award must be guided by (1) the objectives of the underlying statute(s) and (2) the

6  interests of the silent class members, and must not benefit a group too remote from

7  the plaintiff class." *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)

8  (quotation marks omitted).  The Court agrees with Plaintiffs that the Employment

9  Law Center of the Legal Aid Society – which actively litigates on behalf of low-

10  income workers to help them recover stolen wages and protect their workplace

11  rights – satisfies these criteria and is therefore an appropriate *cy pres* beneficiary in

12  this wage-and-hour action.  Accordingly, the Court finds the Legal Aid Society –

13  Employment Law Center is an appropriate *cy pres* beneficiary in this matter.

14          For the foregoing reasons, the Court finds the strength of Plaintiffs' case and

15  the amount offered in settlement weigh in favor of preliminary approval.

16

17          **C.      Likely Expense and Duration of Further Litigation**

18          Undoubtedly the expense incurred by Plaintiffs and the class will increase as

19  the case progresses.  This action has progressed for more than 18 months, and

20  neither side has brought dispositive motions.  Thus, if settlement were not reached,

21  Plaintiffs and other class members would likely incur additional costs in conducting

22  further discovery, bringing or defending dispositive motions, and, if applicable,

23  preparing for and participating in trial.  The Court finds that this factor favors

24  preliminary approval of the Settlement Agreement.

25

26          **D.      Extent of Discovery Completed**

27          This factor requires the Court to evaluate whether "the parties have sufficient

28  information to make an informed decision about settlement."  *Linney v. Cellular*

*Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs, Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011). Here, Plaintiffs' Counsel represents that the parties have engaged in substantial formal and informal discovery over the course of more than a year, propounding interrogatories and document requests on MetLife and performing damages calculations.  (First Markham Decl. ¶ 8.)  As a result, Plaintiffs assert that the "real value of the class' claims was well known" when settlement talks began.  (Id. ¶ 14; mem. at 24.)  With the above in mind, the Court finds that the parties had sufficient information to make an informed decision about settlement.

The Court recognizes that settlement occurred before class certification or any other dispositive motions were filed with the Court.  However, the parties have shown that they have spent significant time investigating this action to allow for an informed decision, but not so much time that the settlement amount will be unnecessarily depleted by extensive costs and fees.  As a result, the Court finds that this factor favors preliminarily approving the Settlement Agreement.

### E.   Risk of Class Certification

Plaintiffs make reference to the risk of litigation but do not otherwise provide the Court with any specific risks relating to class certification in this litigation.  (*See* mem. at 18.)  Hence, the Court need not consider this factor for settlement purposes. *See In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval nor disapproval of settlement where the court was "unaware of any specific difficulty in maintaining class-action

1   status were [the] case to continue to trial").

2

3       **F.      Experience and Views of Counsel**

4       Plaintiffs' Counsel have substantial experience serving as plaintiff's counsel

5   in class actions and have fully endorsed the Settlement Agreement as fair,

6   reasonable, and adequate.  (First Markham Decl. ¶ 16; Second Markham Decl., Doc.

7   44-2, ¶ 8.)  This factor weighs in favor of preliminarily approving the Settlement

8   Agreement.

9

10      **G.      Reaction of Class Members to Proposed Settlement**

11      As of yet, Plaintiffs provide no evidence regarding class members' reaction to

12  the proposed settlement.  The Court recognizes that the lack of such evidence is not

13  uncommon at the preliminary approval stage.  Prior to the fairness hearing,

14  however, Plaintiffs' counsel shall submit a sufficient number of declarations from

15  class members – including, but not limited to, Plaintiffs Johnson and Cowley –

16  discussing their reactions to the proposed settlement.

17

18  **V.   PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND**

19       **METHOD**

20      For a class certified under Rule 23(b)(3), "the court must direct to class

21  members the best notice that is practicable under the circumstances, including

22  individual notice to all members who can be identified through reasonable effort."

23  Fed. R. Civ. P. 23(c)(2)(B).  However, actual notice is not required.  *See Silber v.*

24  *Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994).

25      The Settlement Agreement states that notice will be mailed to class members'

26  last known addresses, as provided by MetLife.  (Settlement Agreement ¶¶ 2.4.1,

27  2.4.3.)  Before mailing, the Claims Administrator will conduct a "Reasonable

28  Address Verification Measure" to ascertain each class member's most recent

address, which will be treated as the last known address if it differs from that provided by MetLife.[8]  (Id. ¶ 2.4.4.)  Notice by mail has been found by the Supreme Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs have provided the Court with a copy of the amended proposed notice.  (Amended Proposed Notice, Doc. 52-1, Ex. B.)  Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  The amended proposed notice includes this necessary information.

Accordingly, the Court finds the proposed notice sufficient as to both the method of delivery and contents, provided the following modifications are made:

1. In Section I, the Notice shall give the full case number in this action: SACV 13-128-JLS (RNBx).

2. After Section II ("Description of the Underlying Claims"), a new Section III should be added entitled "Description of the Class," and stating: "A class member is anyone who was employed by MetLife as a Financial Services Representative at any time from January 25, 2009 through March 31, 2014."  (*See* Settlement Agreement ¶¶ 1.1, 1.4, 1.5.)

---

[8]  The parties have also set forth a procedure for attempting to ascertain class members' current addresses if mail is returned to the Claims Administrator.  (Id. ¶ 2.4.)

3.  A final sentence should be added to the "Attorneys' Fees and Class Representative Payments" section of the Notice, stating: "Class Counsel will file their Motion for Attorneys' Fees, Litigation Costs and Expenses, and Class Representatives' Enhancement Award no later than **January 26, 2015**.  The Court must approve all of these payments.  You may object to the amount of any of these payments by submitting a written objection described in Section VII by **March 3, 2015**, or by appearing in person at the Court's final approval hearing on **March 13, 2015**."  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (holding that a district court must set a settlement schedule that provides class members an adequate opportunity to review and object to class counsel's completed fee motion).

4.  In the "Examination of Papers Filed in This Action" section on Page 11, the Notice should state that all papers filed in this action will be available for review as part of the Court's files in this matter at the Office of the Clerk of Court or "via the Court's PACER (Public Access to Court Electronic Records) website," along with PACER's URL (http://www.pacer.gov).

The parties must provide an updated copy of the Notice and related forms within **10 days** of this order reflecting the changes identified above.

## VI.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to preliminarily approve the proposed settlement, conditionally certify the settlement class, appoint Plaintiffs as class representatives and Plaintiffs' counsel as Class Counsel, appoint Gilardi & Co. LLC as Settlement Administrator, and approve the form and method of class notice.  The Court sets a fairness hearing for **March 13, 2015, at 2:30 p.m.**, to determine whether the Settlement Agreement should be finally approved as fair,

reasonable, and adequate to class members.[9]  The Court also sets the following dates for notice and further briefing in this matter:

| | | |
|---|---|---|
| a. | Deadline for Metlife to Submit Class Member Information to Claims Administrator | **November 20, 2014** |
| b. | Deadline for Claims Administrator to Mail the Notice and the Claim Form to Class Members | **December 1, 2014** |
| c. | Deadline for Class Members to Postmark Disputes as to the Number of Workweeks Worked | **January 16, 2015** |
| d. | Deadline for Class Members to Postmark Requests for Exclusion/Opt Out | **January 16, 2015** |
| e. | Deadline for Class Members to Postmark Objections to Settlement to Court and Counsel | **January 16, 2015** |

---

[9]  The Court reserves the right to continue the date of the fairness hearing without further notice to class members.  The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreement.

| | | |
|---|---|---|
| f. | Deadline for Class Counsel to file Motion for Final Approval of Settlement | **January 26, 2015** |
| g. | Deadline for Class Counsel to file Application for Attorneys' Fees, Attorneys' Costs and Enhancement Award | **January 26, 2015** |
| h. | Deadline for Class Members to submit objections to application for attorney's fees | **March 3, 2015** |
| h. | Deadline for Class Counsel to file Claims Administrator's Declaration of Due Diligence and Proof of Mailing | **March 3, 2015** |
| i. | Deadline for Class Counsel or Metlife's Counsel to file responses to any written objections submitted to the Court. | **March 3, 2015** |
| j. | Final Fairness and Final Approval Hearing | **March 13, 2015** |
| k. | Deadline for Settlement Administrator to mail Settlement Awards and Enhancement Awards, and Attorneys' Fees and Costs (if Settlement is Effective and | 30 days after the Effective Date of the Settlement |

| | there are no pending  appeals) | |
|---|---|---|

This preliminary approval order is conditioned upon the parties providing the Court within **10 days** of this order an updated copy of the Notice reflecting the changes identified above.

DATED:   November 6, 2014

JOSEPHINE L. STATON

HON. JOSEPHINE L. STATON

UNITED STATES DISTRICT JUDGE

27